2004 OK CIV APP 87

Charles GRIFFIN, Plaintiff/Appellant,

v.

BAKER PETROLITE CORPORATION,
Defendant/Appellee.

No. 100,312.

Court of Civil Appeals of Oklahoma,
Division No. 3.

Sept. 17, 2004.

Mike Jones, Alan Souter, Jones Law Office, Bristow, OK, For Appellant.

Steven A. Broussard, Marshall J. Wells, Hall, Estill, Hardwick, Gable, Golden & Nelson, P.C., Tulsa, OK, For Appellee.

Opinion by LARRY JOPLIN, Judge.

¶1 Plaintiff/Appellant Charles Griffin (Plaintiff) seeks review of the trial court's order granting the motion for summary judgment of Defendant/Appellee Baker Petrolite Corporation (Defendant) on Plaintiff's claim to recover damages for Defendant's alleged intentional infliction of emotional distress. In this accelerated review proceeding, Plaintiff asserts (1) neither the exclusive remedy provisions of the Oklahoma Workers' Compensation Act, 85 O.S. §§ 1, et seq., § 11 and § 12, nor his "election" to pursue and accept workers' compensation benefits for his job-related occupational disease, bar prosecution of his emotional distress claim, and (2) construing the facts in the light most favorable to him, there exist material facts in controversy concerning whether Defendant's acts were sufficiently extreme and outrageous as to permit recovery, precluding the summary disposition of his claim. Having reviewed the record, however, we hold the order of the trial court should be, and hereby is, affirmed.

¶2 In April 1997, Plaintiff applied for and accepted employment at Defendant's Sand Springs facility as a pilot plant process chemist, a position in which Plaintiff knew he would be exposed to various chemicals. Defendant assigned him to work on a project in the pilot plant, where, in the course of his employment, he was exposed to several gaseous substances, including ethylene oxide, dioxane and boron trifluoride etherate, in the process of producing batches of chemicals for a customer of Defendant.

¶3 According to Plaintiff, the pilot plant production facility was plagued by problems. Particularly, Plaintiff averred the production equipment leaked excessive ethylene oxide, and that Defendant made little or no effort to ameliorate the problem, in spite of warnings by the customer concerning the hazards of inhaled ethylene oxide, and internal requests for repair of the production equipment.

¶4 Plaintiff subsequently asserted physical symptoms as a result of his on-the-job exposures,[1] eventually refused to return to his work station in the pilot plant, and requested reassignment to a different position. According to Defendant, there were no other positions for Plaintiff in the facility, and, when Plaintiff reiterated he would not return

1. In December 1997, Plaintiff, joined by a coworker, wrote a memorandum to his direct supervisor, complaining of nausea, headaches, eye irritation, sneezing, coughing, shortness of breath and gastric problems which he attributed to exposure to the airborne chemicals produced in the pilot plant.

to work in the pilot plant, the Defendant "accepted [Plaintiff's] resignation—effective February 5, 1998—for his refusal to perform the job for which he had been hired."

¶ 5 Plaintiff filed a complaint with the United States Department of Labor, Occupational Safety and Health Administration (OSHA), asserting his prohibited discharge for submission of his health and safety complaints to Defendant. An OSHA investigator determined Plaintiff's complaint "to be without merit." OSHA consequently dismissed his complaint and denied his administrative appeal, citing "a negative OSHA inspection[,] . . . his employer addressing all safety concerns raised," and the evidence of his termination "for unrelated disciplinary reasons." [2]

¶ 6 On or about May 11, 1998, Plaintiff filed a Form 3 in the Oklahoma Workers' Compensation Court, asserting a compensable cumulative trauma respiratory illness from exposure to "ethylene oxide, dioxane, BF3 and other chemicals" arising out of and in the course of his employment with Defendant. *By order filed May 1, 2002, the Workers' Compensation Court eventually awarded Plaintiff benefits for two percent (2%) permanent partial disability to the body as whole for "an occupational disease consisting of injury to the LUNGS due to the continued inhalation of, and exposure to, harmful dust, smoke and fumes," "exposure [to which] was peculiar to or characteristic of [Plaintiff's] employment with" Defendant.*

¶ 7 In February 2000, Plaintiff commenced the instant action, claiming actual and punitive damages arising from his wrongful, retaliatory discharge by Defendant in violation of 85 O.S. § 5, *and* Defendant's intentional infliction of emotional distress, i.e., Defendant's extreme, outrageous, reckless and/or intentional acts in failing to address and protect employees from the known dangers of ethylene oxide in the work place. Plaintiff subsequently confessed Defendant's motion for summary judgment on his retaliatory discharge claim.

¶ 8 Defendant then filed another motion for summary judgment, presenting evidentia-

ry materials showing Plaintiff's recovery in the Workers' Compensation Court for his job-related occupational disease, and argued to demonstrate its abatement of reported hazards, including an OSHA inspection, soon after Plaintiff's discharge, which "disclosed no existing leaks of hazardous chemicals." Defendant argued that (1) the exclusive remedy provisions of the Oklahoma Workers' Compensation Act (Act), 85 O.S. §§ 1, et seq., § 11 and § 12, barred prosecution of the emotional distress claim; (2) Plaintiff's election to pursue and accept workers' compensation remedies precluded assertion of his emotional distress claim; and (3) the complained-of conduct—failure to protect from exposure to harmful chemicals—did not even arguably rise to the extreme and outrageous, intentional and/or reckless level necessary to support an actionable emotional distress claim.

¶ 9 Plaintiff responded, presenting evidentiary materials argued to show Defendant's appreciation of the hazards associated with inhalation of ethylene oxide, and Defendant's failure or refusal to abate the ethylene oxide pollution in the pilot plant in spite of numerous reports and requests for repairs. Plaintiff argued that neither the exclusive remedy provisions of the Workers' Compensation Act, nor his election to pursue and accept his workers' compensation remedies for his physical injury under the Act, precluded prosecution of his emotional distress claim, an intentional tort and a matter outside the scope of Workers' Compensation remedies. Plaintiff also argued the evidentiary materials, when viewed in the light most favorable to him, established a controversy of material fact concerning whether Defendant's acts were sufficiently extreme and outrageous as to permit his recovery, precluding the summary disposition of his claim.

¶ 10 On consideration of the parties' arguments and submissions, the trial court granted Defendant's second motion for summary judgment, finding "that Plaintiff's claim for intentional infliction of emotional distress is barred by the exclusive remedy provision

---

**2.** Plaintiff also complained to the Equal Employment Opportunity Commission, asserting his impermissible discharge "for chemical injury re-

sulting in disability without accommodation," but the record does not bear out the resolution of Plaintiff's EEOC complaint.

contained within 85 O.S. § 12." Plaintiff appeals, and the matter stands submitted for accelerated review on the trial court record.[3]

¶ 11 Section 11 of title 85 directs that "[e]very employer subject to the provisions of the ... Act shall pay, or provide as required by the ... Act, compensation ... the disability or death of an employee resulting from an accidental personal injury sustained by the employee arising out of and in the course of employment, without regard to fault as a cause of such injury" except in limited circumstances. "The liability prescribed in Section 11 ... shall be *exclusive* and in place of all other liability of the employer and any of his employees, ..., at common law or otherwise, for such injury, loss of services, or death, to the employee, or the spouse, personal representative, parents, or dependents of the employee, or any other person." 85 O.S. § 12. (Emphasis added.)

■ ¶ 12 The exclusive remedy provision of § 12 ordinarily precludes assertion of a common law action against an employer to recover damages for an accidental workplace injury. *See, e.g., Maryland Casualty Co. v. Hankins*, 1975 OK 25, ¶ 13, 532 P.2d 426, 429; *Roberts v. Barclay*, 1962 OK 38, ¶ 21, 369 P.2d 808, 811. In some cases, however, "an employee who has been wilfully injured by his employer [may] ha[ve] a common law

action for damages." *Roberts*, 1962 OK 38, ¶ 4, 369 P.2d at 809; *Adams v. Iten Biscuit Co.*, 1917 OK 47, ¶ 17, 162 P. 938, 945.

■ ¶ 13 Nevertheless, "an employee who has two remedies for the same injury and has prosecuted one of them to conclusion (securing an award or judgment), is barred from resort to the other remedy." *Dyke v. Saint Francis Hosp., Inc.*, 1993 OK 114, ¶ 20, 861 P.2d 295, 302; *Pryse Monument Co. v. District Court of Kay County*, 1979 OK 71, ¶ 2, 595 P.2d 435, 436–437.[4] "This rule, which in essence erects a res judicata bar, is applicable to compensation claimants who may also press a tort remedy." *Dyke*, 1993 OK 114, ¶ 20, 861 P.2d at 302. "The law provides but one method to avoid the [election of remedy] bar"—by action "in a district court suit to set aside the [workers' compensation] award for extrinsic fraud"—and "[b]arring this relief, which is the sine qua non of a later tort redress, the award must be given its full res judicata effect." *Dyke*, 1993 OK 114, ¶ 21, 861 P.2d at 302.

¶ 14 Plaintiff asserts the holdings of *Pryse Monument*, followed in *Dyke*, do not apply in the present case. Particularly, Plaintiff argues that in *Pryse Monument*, plaintiff alleged injury as a result of the *uninsured* employer's *negligence*, an action expressly permitted by 85 O.S.1971 § 12,[5,6] but proper-

---

**3.** See, Rule 13(h), Rules for District Courts, 12 O.S.2001, Ch. 2, App.; Rule 1.36, Oklahoma Supreme Court Rules, 12 O.S.2001, Ch. 15, App.

**4.** "One who sustains an on-the-job injury while employed in a business which remains impermissibly uninsured though it is governed by the Workmen's Compensation Act has been given Two distinct remedies for vindication of his Single, statutorily-conferred right to recover. One of these is by claim in the State Industrial Court and the other by district court action in tort based on negligence (with some defenses being denied to the employer). The two remedies available are separate, alternative, mutually exclusive and cognizable in different forums. They are governed by distinctly varying theories and measures of recovery. These very characteristics combine to make the two remedies 'coexisting but inconsistent' as distinguished from 'concurrent and consistent.' The pursuit of one will preclude simultaneous prosecution of the other. Were suits pursuing both remedies pending at the same time, one of them, at claimant's election, would be abatable as vexatious. The abate-

ment's inchoate bar becomes absolute and conclusive when the remedy, once chosen has been pursued to a point of conclusion. That point is reached at the first suit's termination whether by recovery or its denial. Waiver by election will preclude the claimant from vexing the employer with a second suit. Once a remedy is chosen and then pursued to conclusion, the point of no return is reached although there has been no satisfaction, much less vindication, of the right.... The preclusion is effective even though the chosen action or suit failed because it had not been timely brought...." (Footnotes omitted.).

**5.** "The liability prescribed in the last preceding section shall be exclusive and in place of all other liability of the employer and any of his employees, at common law or otherwise, for such injury, loss of services or death, to the employee, spouse, personal representative, parents, dependents, or any other person, *except that if an employer has failed to secure the payment of compensation for his injured employee, as provided in this Act, then an injured employee, or his*

ly barred by the plaintiff's election to pursue and accept workers' compensation benefits for the same injury. Plaintiff asserts the present case, based on allegations of the *insured* Defendant/employer's *intentional* acts, concerns an injury wholly outside workers' compensation coverage, and "is not an action based on a prior election of an inconsistent remedy."

¶ 15 Plaintiff's argument to distinguish *Pryse Monument* and *Dyke* does not depend on whether the employer is insured or uninsured. Plaintiff's argument centers on whether his injury results from Defendant's mere negligence, a matter within the exclusive remedy provision of § 12, or results for Defendant's intentional conduct, a matter clearly outside workers' compensation remedies.

¶ 16 In this respect, although without deciding "whether an employer may act with such reckless disregard of the known facts as to be subject to tort liability independent of the [Oklahoma] Workers' Compensation Act," the Oklahoma Supreme Court has recognized that "[s]ome courts limit recovery to the so called 'true intentional torts'—situations where the employer intended the act and intended the injury[,] [while] [o]ther jurisdictions rely on a 'substantial certainty test' and determine that if the employer intended the act that caused the injury or knew the injury was substantially certain to occur from the act, the employer has committed an intentional tort." *Davis v. CMS Continental Natural Gas, Inc.*, 2001 OK 33, ¶¶ 13–14, 15, 23 P.3d 288, 292–295. The Court of Civil Appeals has held that "the clear weight of authority" required a showing of the employer's " 'deliberate intention' to cause an employee's injury." *Harrington v. Certified Systems, Inc.*, 2001 OK CIV APP

53, ¶¶ 29–33, 45 P.3d 430, 435–436. However, both the Supreme Court and the Court of Civil Appeals agree that neither ordinary negligence, nor gross negligence, fulfills either the actual intent test or the substantially certain test. *Davis*, 2001 OK 33, ¶ 14, 23 P.3d at 295; *Harrington*, 2001 OK CIV APP 53, ¶ 33, 45 P.3d at 436.

■ ¶ 17 In the present case, the risk of exposure to airborne chemicals was a risk of the employment. Viewing the evidence in the light most favorable to Plaintiff, we discern no evidence arguably showing that Defendant actually intended to inflict emotional distress on Plaintiff. Nor is there evidence, which, in our view, arguably demonstrates that Defendant knew or was substantially certain Plaintiff would suffer emotional distress as a result of either the on-the-job exposures, or Defendant's failure to more quickly abate the problem. The evidence, it seems clear to us, demonstrates nothing more than Defendant's negligence in failing to abate the ethylene oxide leaks more quickly than it actually did, but even if negligent or grossly so, such negligence is insufficient to demonstrate either Defendant's specific intent to injure, or Defendant's substantial certainty that injury would occur.

■ ¶ 18 Moreover, a *mental* injury which "accompanies" a compensable, job-related *physical* injury is compensable under the Oklahoma Workers' Compensation Act. See, 85 O.S. Supp.2000 § 3(10)(c); *Shivel v. Wexford Health Sources*, 2003 OK 25, ¶¶ 9–10, 66 P.3d 414, 416; *Wal–Mart Stores, Inc. v. Reinholtz*, 1998 OK 11, ¶ 18, 955 P.2d 223, 226. So, where a worker sustains a physical injury accompanied by a mental injury in the same job-related occurrence, the worker's

legal representatives if death results from the injury, may maintain an action in the courts for damages on account of such injury,...." (Emphasis added.)

6. Now see, 85 O.S.2001 § 12 ("The liability prescribed in Section 11 of this title shall be exclusive and in place of all other liability of the employer and any of his employees, any architect, professional engineer, or land surveyor retained to perform professional services on a con-

struction project, at common law or otherwise, for such injury, loss of services, or death, to the employee, or the spouse, personal representative, parents, or dependents of the employee, or any other person. If an employer has failed to secure the payment of compensation for his injured employee, as provided for in this title, an injured employee, or his legal representatives if death results from the injury, may maintain an action in the courts for damages on account of such injury,....")

remedy for both the physical injury and the accompanying mental injury lies in the workers compensation court. *Wal–Mart Stores, Inc.,* 1998 OK 11, ¶ 19, 955 P.2d at 226.[7] And, where a claimant pursues his workers' compensation remedy for his physical injury, and he is bound to then timely assert his claim for accompanying emotional injury which, he knows, arose out of the same working conditions which caused his physical injury. *See, e.g., Sneed v. McDonnell Douglas,* 1999 OK 84, ¶ 13, 991 P.2d 1001, 1006; *Barnes v. Indian Terr. Ill. Oil Co.,* 1935 OK 128, ¶ 15, 41 P.2d 633, 635.

¶ 19 In the present case, the evidence uncontrovertedly demonstrated that Plaintiff suffered a physical injury arising out of and in the course of his employment with Defendant, for which he received an award of workers' compensation benefits. The uncontroverted evidence also showed that the emotional distress of which Plaintiff complained clearly bore a causal relationship to the terms and conditions of his employment, and arose out of the same exposure(s) which caused his physical injury. Plaintiff's physical and emotional injuries were the product of a job-related risk. Because Plaintiff's emotional distress arose out of the same job-related exposures and accompanied the job-related occupational disease, Plaintiff's sole and exclusive remedy for his emotional injury lay in workers' compensation, and Plaintiff's election to pursue and accept workers' compensation benefits for the same negligently caused injuries bars prosecution of the instant suit. *Dyke,* 1993 OK 114, ¶ 20, 861 P.2d at 302.

¶ 20 On the uncontroverted facts, the trial court concluded that the exclusive remedy provision of the Oklahoma Workers' Compensation Act, § 12, and Plaintiff's election of workers' compensation remedies, barred prosecution of Plaintiff's claim for intentional infliction of emotional distress. We agree. The order of the trial court granting the motion for summary judgment of Defendant is therefore AFFIRMED.

HANSEN, J., and MITCHELL, P.J., concur.

---

7. "Under the set of circumstances in the instant case, the statutorily required accompaniment of compensable physical injury, which includes Claimant's injury to the back, and psychological injury exists and resulted from accidental injury. Claimant's resulting psychological disability is within the parameters of the Workers' Compensation Act."